Good morning, Your Honors. Tim Warner for Mr. Pulley. I just ask to reserve five minutes before rebuttal. All right. What's the clock? Okay. This case presents the interesting issue of what it means to have a meaningful right to self-representation. The defendant has a right to self-representation. In this case, the court, the client, requested self-representation. You know, if he had requested self-representation earlier in the case, I think it would be pretty clear under Ninth Circuit law he'd have been entitled to have it and to get a continuance so that he could prepare for it. The problem that a trial judge has with a claim like Pulley's is it looks like he's just been jerking the court around. He's content with his lawyers. He's discontented with his lawyers. He's had this lawyer for a while. He says he wants to fire him just as trial is supposed to start. Everyone knows that there's a lot of pretrial preparation that goes into a trial. People have to arrange for their witnesses to show up on time and where to be. And talking them into doing the same thing again after it was aborted is very difficult. So the judge is impatient with what looks like another stall in a trial that's been stalled for a long time. I don't see why this is almost, it took almost eight years for reasons that don't make any sense to me to get this case to trial. I don't see why the judge would interpret it as anything but an attempt to throw the case off the tracks yet again. I guess my response to that would be that when this issue was brought to the court's attention, the court did as it was required to do, it conducted an inquiry. It allowed Mr. Pulley to talk. It allowed his attorney to talk. And the court did not deny, well, the court conducted an inquiry and it did not make any findings that this was done for the purpose of delay, that this was somehow in bad faith. And if you, Mr. Pulley himself makes the statement that he just felt he was not going to get a fair trial with his counsel. So the court made no findings. It conducted an inquiry. And I guess I'm not faulting the court for looking, you know, the skeptical point of view given the time that the case had been going on. But there just are no court findings. And then when the court gives Mr. Pulley a choice, he says look, you could. It's kind of like making a finding of fact that here it is on a November morning in San Francisco and I find as a matter of fact that the sun is above the horizon. It's so obvious in this case. Well. Yeah. What was interesting is that he did, the defendant said I want to represent myself and the court said all right, and then he relieved counsel. He didn't say no, you didn't make a timely request to represent yourself, so I'm not going to relieve you. I'm not going to relieve counsel. He didn't say that. So, I mean, that's the problem I'm having with this case, because he actually relieved him. I don't think he necessarily, I think if he had made the proper inquiry and gone further and said I think this is for purposes of delay and it's prejudicial, then that would be well within his rights to deny this on that ground. But once having granted it, to then not give him the various continuance seems odd to me. Right. That is my point, which is that once the choice, he made the choice of representing himself. The court gave him that choice. He made that choice. And once the court has granted that right of self-representation, we can't condition it on you being able to represent yourself without having an ability to prepare, so it's got to be meaningful. So I think that's the issue. The problem we have here is that that is the framework that we're in because of the procedure that the court followed. He was here. Well, it's kind of a hollow victory, isn't it? I mean, if he, you know, Ferrius does say it has to be a meaningful chance to defend yourself. This was done three days before trial was set, correct? Yes. Yes, it was. So the remedy here is if there was an unequivocal request for self-representation and it was not for the purpose of delay, that would seem to violate Ferretta. Yes. And he gets a new trial. A new trial. But the other part of this, is he, is he, because his lawyer went along with all of this ends of justice extensions of the Speedy Trial Act, is he, is he a stopped from now arguing a violation of the STA? I think that issue was, at least the district court did not find that he was stopped. And the district court reached the merits of that determination and reached the merits of it. So the odd thing to me is that this thing, this case, this criminal case was pending for eight years and it's one count of unlawful possession of a firearm by a felon. And the continuances are repeatedly granted on the basis that the case is complex. And to me, it doesn't seem complex at all. It seems very, very simple. I believe the history of the case was that it started off more complex in that it involved really some sort of a... Terrorist kind of thing. Yeah. That he was involved with some organization, terrorist type organization. That didn't pan out. And what they're left with is this felon in possession case. But were there, I didn't go through the Speedy Trial Act step by step by step by step, but were there, once it was clear that it wasn't part of this terrorist organization and he wasn't going to be charged with anything related to terrorism, were there still extensions based on the complexity of the case? Your Honor, I can't point you to the exact date that that change happened, but I believe that there were extensions made on complexity. I went through the list and there were a number of extensions based on complexity. I thought there were a vast number of extensions and that what the complexity was was an enormous number of more or less frivolous motions by Pulley. I notice you're nodding. It's hard to argue against that. I'm not sure how to respond to that. It's a complex job for the judge just sorting through what is this guy claiming? What does he even want? I think his counsel made a number of motions that were not frivolous motions and I've raised some of them here. You don't challenge any of the factual basis for the continuances? No. And that was not challenged by the trial counsel. The issue was a legal issue of whether the ---- The issue was some of the continuances I thought were for purposes of plea bargaining or for reaching a settlement. Right. But that's not allowed. Those aren't proper bases, right? There was a stipulation to it. So, you know, that's not an issue. So you're not raising that as an issue? No, no. Your main argument here is the ---- The FREDA issue. FREDA issue. I think that is the main argument I'm making and I, of course, argued the speedy court was a legal issue about the ---- The language of the finding. Right. Why not treat his request for self-representation as equivocal because he demands it and then he immediately rescinds it? Well, I really don't think it was equivocal because he says very clearly that I want to represent myself. I think the sequence is important. The court gives him the choice. And the court says to Mr. Pulley, you could have a seat, okay? And then the case that the court calls is one where the guy wanted to represent himself. And when the court calls Mr. Pulley's case again, he says, well, Mr. Pulley, you've had a ---- you've listened to the case that was just called where I advised about the dangers. And then the court ---- the client says, I want to represent myself. Then the court goes through the dangers of self-representation and the client doesn't rescind that. It's only when it gets to the issue of, judge, I'm not going to be able to prepare if I've got to do this in three days that the client says, then I can't represent myself, I can't do it unless I have some time. So I don't think it was equivocal. The client had plenty of time to think about it, to rescind it for other reasons, except by all appearance it was the court refusing to give him some time to prepare. He doesn't say he has to prepare for trial. What he says is that he wants to make more motions. As I understood what he was saying. And then the judge says, I won't permit further delay in this case. It is outrageous. It is inappropriate. I'm not going to do it. And I'm not going to do it on the basis that you think he, that is, his lawyer, should have filed motions. And I don't know what they would be, but he tells me he's filed motions. And he filed them in front of me. And I'd really want to know what's wrong with them. Because he didn't say what was wrong with his lawyer. He wouldn't say what's obvious and goes on like that. It sounds like it's about just filing more motions. There also was a discussion about him wanting to subpoena witnesses and the court telling him how he could do that. And that was just preceded the. Well, that you can do in three days. Right. And then what the client says, quote, I can't prepare a trial by then. I'd have to restudy. And in three days, four days, I wouldn't be able to do it. That's at 172 of my excerpts of record. So he does, the client does express a concern. Hey, I've got to prepare for this trial in a very short period. Okay. All right. Well, you wanted five minutes. Yeah, I'll reserve the rest. You've got four. Thank you. All right. Thank you. Good morning, and may it please the Court. I'm Matthew Yelovich from the United States. The defendant's last-minute request for a fifth court-appointed attorney should not now be construed. I thought the first attorney died. The first attorney did die, Your Honor. The second attorney withdrew. The second attorney did withdraw, Your Honor. So. This isn't a fifth request. That's one of the things about this briefing and what the judge said. No, he didn't. It wasn't his fault that he went through that many attorneys. That's correct, Your Honor. I'm not contending that that was his fifth request. It was a request for a fifth court-appointed attorney. But regardless, on the eve of trial in 2007, the defendant had relieved counsel at the trial confirmation hearing previously, and that's at Supplemental Excerpts of Record 93. In December of 2006, the Court. So as I was trying to express earlier, some of these factors to be considered on which the judge is supposed to make findings go to whether or not the court should allow him to exercise his right of self-representation. That's the test about, you know, the purpose, undue delay. But in this case, it seems as though the judge didn't do that appropriate inquiry, didn't make the appropriate findings, relieved the counsel, and then afterwards said, but you're not going to get a continuance. And it seemed like, to me, he should have handled this in a, like, maybe I'm being too overly technical, but I think this is what he should have done. Instead, he just granted him the motion. Well, Your Honor, the district court did relieve counsel temporarily, but. No, he didn't say temporarily. He said, Mr. Greiner, you're relieved. He did say that, and then he provided Faretto warnings to the defendant. And after those warnings, and in conjunction with saying the trial would go forward as set, the defendant withdrew his assertion of self-representation right. And I think under this Court's jurisprudence, we look to the record as a whole to determine whether there was a purpose of delay here. And I think if you look at the defendant's actions throughout the proceedings, it's difficult to come to any different conclusion when he had previously, on the eve of trial, relieved his third court-appointed attorney. And then here, at his 31st appearance before the district court, he relieves his fourth court or attempts to relieve his fourth court-appointed attorney. And for that reason, I think the district court pointed out that there didn't seem to be a basis for either relieving this attorney or for continuing any further. Counsel, he doesn't need a basis for firing his lawyer. Anybody is entitled to fire their lawyer. My real difficulty with your case on this is I do not understand how you distinguish Farias, United States v. Farias, Ninth Circuit, 2010. Sure. Why don't you explain it to me? Sure. Well, Farias specifically relied upon the fact that both there was no finding of a purposeful delay in the record, which is the same here. There's no finding by the district court. But also, the Farias court said, and there's also no evidence in the record of such purpose. And that's at 1055 of the Farias opinion. Here, as appellant's counsel pointed out, even though it looked obvious to me, nevertheless, the judge never said, I think you're just doing this for purposes of delay. And instead of saying I'm denying, and as Judge Wardlaw pointed out, the judge didn't say I'm denying your request to represent yourself because I think it's for purposes of delay. Instead, the judge said, I grant your request. And then I look at Farias at page 1054, and it says, when the judge twice made it clear to Farias that if he chose to exercise his right to proceed pro se, he would be expected to proceed to trial the following day, making it clear he'd have no time to prepare if he chose to proceed pro se. The district court denied him his right to meaningfully represent himself. So I want to find out, why aren't we bound by Farias to reverse? Well, the factual circumstances here are dramatically different, Your Honor. How? In Farias, the indictment was on October 28th, and the trial went on January 13th. So that was a three-month case, or less than three-month case. And the defendant, at oral argument, his counsel argued that he raised his self-representation right at the first available moment, and that was the day before on the hearing on January 12th. Now, in that case, there had been a December hearing, so the government argued that he could have raised the issue at the December hearing. But regardless, it's difficult for the Fritz factors to be met there, where the conduct of the defendant is consistent with a good-faith assertion of his right to self-representation. In this case ---- Okay. So I've got two distinctions so far. Three months there, eight years here. Raised self-representation at the first opportunity there. There was no ---- Eight years later here. Sure. Many years later here. That's right. And there was no dispute that it was an unequivocal assertion in Farias, whereas in this case the government contends that it in fact was equivocal. It was the court's idea, not the defendant's. And the ---- In what sense? It was the court's idea. The court suggested it to the defendant. The defendant didn't raise the idea of self-representation before the court suggested it. And ---- In this case, you mean? In this case, yes. Doesn't that make it worse? I mean, in a sense, because if he's saying, well, you can represent your ---- that's coming from the court. I mean, that's kind of he's giving him an option and then taking it away. Well, I think the court's ---- I think a fair reading of that hearing is that the court is saying, I'm not going to appoint another attorney for you for no reason. Now, your options are you can go to trial with this attorney or you can represent yourself. And those were the options before the defendant. And so the defendant at that point decided to choose the second option. Okay. You've laid out these distinctions. Any more that should go on the list? I would just repeat the fact that ---- Don't repeat. Any other ones? No, Your Honor. Okay. Let me ask you something else then. I've never seen a criminal ---- well, I've seen one other case and it horrified me where a criminal trial takes eight years from the time of the charge. I remember one when I was a district judge and it was because the government said on the record they were trying to use the guy as a snitch. And after, I don't know, another six months or so, I asked them where are the indictments and there weren't any. And so we just tried the case. I don't understand this eight years business. Well, there are a few ---- A bunch of motions. They look like garbage. The magistrate judge or law clerk or somebody draws up a comprehensive order on all of them. Well, defense counsel, in addition to, as the unfortunate circumstances pointed out by the Court, the first attorney passed away, the second attorney withdrew. The death gets a continuance. Right. And so there was continuity of counsel issues early on in the case. You start over again after the death. And in addition, once the third attorney, both sides are ---- But the death was pretty early on in that eight-year period, as I recall. That's right. And in early 2007, the Court is ready to set it for trial and, in fact, calls a hearing to do so. And that's when the third court-appointed attorney is relieved. So that's 2007. From there, you have a new attorney coming into the case. And as defense counsel pointed out, and it's clear from the record, there are involving the defendant in this case. So while it is a single-count 922G case, it's also unusual in the sense that it was a months-long investigation that led to voluminous discovery that the defense desired to go over in an attempt to formulate motions, again, at the defendant's request. And those motions, while Your Honor thinks they were borderline frivolous, they were voluminous. I mean, there were multiple motions, 46 exhibits. And there was a motion schedule that the defendant assented to. The district court made clear on the record that she was observing his nonverbal cues as he was okay with the motion schedule as set. And so for the ---- Who cares if he's okay with that? One of the interesting characteristics of 18 U.S.C. 3161, as opposed to most State procedures, is you can't stipulate them away. Well, that's correct in the sense that he can't ---- he's not stopped from raising that at the district court or raising it on appeal. Now, as you heard earlier, defense counsel doesn't make the argument that the factual basis for the exclusions was ---- is contested at all. Instead, the defendant's arguing that there has to be an explicit balancing inquiry on the record. So that argument's actually not been made here. But to speak to that issue, the motion ---- at the time of the motion calendar setting, the reason it matters that the defendant assented or, in fact, put forward the calendar is that that was why the government was prepared to go to trial in 2007. So that was why the case was not tried right away, to speak to Your Honor's concern. And that's clear from the record. Thank you. So I have just one other, like, wrinkle on this. He says that the reason that he wanted to get rid of Mr. Greiner, he tells Judge Carlton this, was because Mr. Greiner was signing these stipulations for extension of time without telling him and without getting his approval. And Greiner says, yeah, that's right, why didn't I always tell him? I mean, isn't that a real legitimate basis for firing your counsel? I mean, I would think that ---- I wouldn't want my lawyer, when I said, when he was doing things in court that affected my rights, and he didn't consult with me. To me, that's very problematic. I take your point, Your Honor. And I would raise two points from the record in response. The first is the defendant was in court at appearances over and between those times when time was excluded by motion and by stipulation. The defendant was there in court while his attorney was stipulating to further exclusions. So it's unclear from the record which exclusions he was unaware of or which Mr. Greiner didn't inform him of when, at sessions after and before the paper exclusions, the defendant's present. The second comment I would make on the reasons for being dissatisfied with counsel is the defendant was intimately involved in the motions practice and in the trial preparation for this case as far back as 2011. And I'm referring to Supplemental Excerpts of Record at 205, where the Court is confirming that Mr. Greiner has spoken and discussed trial strategy with his client, has discussed what motions the client once filed, and goes ahead and does so. Now, the Court has expressed some concern that those motions didn't have much merit. But I think Mr. Greiner can't be faulted for filing those motions at his client's insistence. The client and the lawyer may be faulted if the client is insisting on frivolous motions and the lawyer is going along with that. That's correct, Your Honor. I think I was just speaking to the point of client satisfaction rather than whether filing frivolous motions is inappropriate. Of course it is. But I would make those contrasting points to his dissatisfaction with Mr. Greiner. If there are no further questions on the FREDA issue, I'm happy to address the other issues raised on the Eighth Amendment or Commerce Clause challenge. But if not, the government submits on the papers. Thank you. All right. Thank you, counsel. You have four minutes. Do you have any other questions? Oh, yes. Okay, yes. I have a question in response to the appellee's distinction between Farias and this case. Right. I guess one issue in terms of raising self-representation, as I understand the rule, it's too late if it's made after the jury is impaneled. But before then, it's not, as a matter of law, too late. So this motion was made in a timely basis. And I think that the Court picked up on this, that the fact that the Court brought or informed him of his right to separate from self-representation in essence and gave him that choice, that would show that it's hard to say that he is trying to delay the proceedings by engaging in self-representation when the Court presented the self-representation to the client as a legitimate choice. Why isn't eight years enough to distinguish the cases? Something that's been bobbing along in the stream for a few months is one thing. If it bobs along for another month or two, and something that's been bobbing along for eight years, no more. So in other words, why didn't he, you know, eight years ago ask to represent himself? Why isn't eight years a good distinction between this case and Farias? Well, for one, we don't have any. There just aren't any findings that this was done for delay, as I've argued before, and the Court is aware. There's just no findings. And the client is entitled to request self-representation. As I said, the rule is up to any time before trial until the jury is impassioned. Wait a minute. I don't think you quite got what I was getting at. Right. It's the eight years is a distinction between the cases. And what I was thinking is the public's entitled to have them tried speedily, and 3161 specifically addresses the public concern, not just the defendant's or the prosecutor's interest. Right, right. You know, and this is what I have argued and what was presented to the district court was that the language of 3161, it requires setting forth the reasons on the record to get away from the sort of a routine or rote granting of motions to exclude time. And I draw an analogy to Rule 403, which requires, ask the judge to put the balancing on the record. Really. They put the reasons on the record. They just do it in code. It's code A or code T or whatever. And I think that was a point that was argued to the district court, is that they put the reasons on the record, but the court didn't engage in the balancing on the record. And it's the balancing is what brings the interest of the public and the defendant as the court is engaging in that. And it is the balancing that really forces the court to engage in that in a public setting on the record. And perhaps what I've argued is it's that that provides that protection. That's hyper-technical. Presumably the judges understand the Speedy Trial Act and know that there are only limited circumstances where they can grant a continuance. So when they get the reasons and stipulate it to grant it, it seems like they're doing it consistent with the statutory mandate that it has to be in the interest of justice. Right. And that was the district court's response, is that, hey, this is just requiring us to engage in a rote recitation of the language. But I guess my response to that would be, is it? It is forcing the court to engage in that balancing in a public way. What's more critical is the factual basis. And here you're not really challenging the factual basis for any one of the continuances. Except to the extent that what we're saying is forcing the court to affirmatively engage in that balancing on the record. Well, but he would balance in light of what the factual predicates are. Right. And you're saying all the factual predicates are fine. He just didn't on the record say that they outweighed getting this case to trial. Right. Before it's in the interest of justice to continue it. And like I said, what I'm arguing is in the bigger scheme of it, perhaps that is designed to protect from. Yes, understood. All right. All right. Thank you, Your Honor. All right. Thank you. United States v. Coley is submitted.
judges: Kleinfeld, Wardlaw, Paez